RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SHARON EARLEY,

> *Plaintiff-Appellee,*

*v.*

COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellant.*

No. 17-4007

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:15-cv-00166—Sharon L. Ovington, Magistrate Judge.

Argued:  June 5, 2018

Decided and Filed:  June 27, 2018

Before:  BOGGS, SILER, and SUTTON, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Weili J. Shaw, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Michael A. Rake, HORENSTEIN, NICHOLSON & BLUMENTHAL, LPA, Dayton, Ohio, for Appellee.  **ON BRIEF:**  Weili J. Shaw, Alisa B. Klein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Michael A. Rake, HORENSTEIN, NICHOLSON & BLUMENTHAL, LPA, Dayton, Ohio, for Appellee.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge.  In 2010, Sharon Earley applied for disability benefits.  In 2012, an administrative law judge rejected the application on the ground that Earley did not have a covered disability.  She applied again for a new period of time.  The same administrative law

judge denied her benefits, in part because he thought that one of our cases, *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), required him to give preclusive effect to the work-capacity finding he had made during the first proceeding absent "new and material evidence documenting a significant change in the claimant's condition." A.R. 30. The district court reversed, concluding that the "principles of res judicata" announced in *Drummond* apply only when they favor an individual applicant, not the government, in a subsequent proceeding. That was wrong. The key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government. At the same time, they do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings. We reverse and remand the case to the agency for reconsideration of Earley's application.

I.

Sharon Earley applied for disability benefits starting on June 25, 2010. Administrative Law Judge David Redmond considered the application. He found that she suffered from a host of physical and mental impairments, including fibromyalgia, mild carpal tunnel syndrome, panic disorder, degenerative disk disease, and major depression. Even so, he found that she remained capable of holding jobs that demanded only light physical exertion and denied the application for the period between June 25, 2010 and May 15, 2012.

Earley applied again in July 2012, arguing that she became disabled after the decision on her last application. The application went to Judge Redmond again. Invoking *Drummond*, he thought he was precluded from revisiting his earlier finding that Earley was not disabled unless she offered new and material evidence of a changed condition. *See* SSAR 98-4(6), 63 Fed. Reg. 29,771, 29,773 (June 1, 1998). Because Earley failed to do that, he denied her benefits on September 18, 2014.

A magistrate judge, hearing the case by the consent of the parties, reversed. She construed *Drummond* to apply in just one direction—if it leads to a favorable outcome for the

applicant but not if it leads to an unfavorable outcome for the applicant. So configured, the case did not apply here, she ruled, as any preclusive effect of the prior ALJ finding would make it more difficult for Earley to receive a disability rating and the benefits that accompany it. In this instance, she found the evidence in favor of a disability finding so strong that she ordered the agency to award benefits to Earley immediately.

## II.

The Social Security Administration pays benefits to people who have become disabled. *See* 42 U.S.C. §§ 423(a) (Title II benefits), 1382 (Title XVI benefits). To obtain benefits, the applicant must convince the agency that her ailments render her "unable to do [her] previous work" and stop her from "engag[ing] in any other kind of substantial gainful work." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

A "five-step sequential evaluation process" guides efforts to implement these two requirements. 20 C.F.R. § 404.1520 (authorized by 42 U.S.C. § 405(a)); 20 C.F.R. § 416.920(a) (authorized by 42 U.S.C. § 1383(d)(1)); *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The Administration checks (1) if the person is not engaged in gainful activity, (2) if she has a severe, medically verifiable physical or mental impairment, and (3) if she has a qualifying impairment that leads to a disability finding by default. 20 C.F.R. § 404.1520(a)(4). If this does not resolve her application, the Administration calculates her residual functional capacity, *id.*, which reflects what sorts of work she can do despite her impairment, *id.* § 404.1545(a)(1). If (4) she has held a job that someone with her residual functional capacity can still do or if (5) someone of her age, education, work experience, and residual functional capacity can adjust to other work available in the national economy, then she is not disabled. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). An unsuccessful applicant may appeal the decision through the administrative review process and eventually to an Article III court. At that point, the inquiry on that application ends.

All of this does not prevent an individual from applying for benefits again. *See* 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* The individual may bring a separate application that claims a later disability-onset date. *See* Procedures for Handling Requests to File Subsequent Applications for Disability Benefits, SSR 11-1p, 76 Fed. Reg. 45,309 (July 28, 2011). A second application starts

the process anew and potentially permits the applicant to obtain benefits through it for this new period of time.  In each event, the question before the ALJ is whether a preponderance of the evidence supports a decision to award benefits under the five-step inquiry, 20 C.F.R. § 404.953(a), and on review whether substantial evidence supports that finding, 42 U.S.C. § 405(g).

The administrative law judge, David Redmond, started down this road and held to it—for a time.  Earley applied for benefits in 2010.  In 2012, Judge Redmond marched through the five-step analysis, found her capable of light work, and decided she was not disabled because a sufficient number of light-work jobs were available to her.

In 2012, Earley filed a new application for benefits, seeking benefits for a new period, namely from May 16, 2012 forward.  Judge Redmond reviewed her case again.  Instead of asking whether the evidence supported Earley's new application, Judge Redmond thought he was *precluded* by the first ruling.  In his view, he was "bound by the findings of [the] previous Administrative Law Judge" because Sixth Circuit case law gave those findings "preclusive effect."  A.R. at 22.

That is not how it works.  An individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold.

In Judge Redmond's defense, we must acknowledge, some language in *Drummond* supports his approach.  In that case, an administrative law judge denied the application of a forty-nine-year-old applicant who was capable of "sedentary" work.  *Drummond*, 126 F.3d at 838.  After receiving that decision, Drummond filed a second application for a new period of time.  Because she had turned fifty by the relevant time of the second application, the administrative law judge found her to be a "person approaching advanced age" under the relevant regulation.  *Id.* at 839.  A fifty-year old capable only of sedentary work under certain circumstances would be considered disabled and receive benefits.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2.  Instead of granting the application on the ground that Drummond now met the test, the second administrative law judge switched gears and found that she could carry out "medium," not just

sedentary, work, thus making her ineligible for benefits on this new ground. *Drummond*, 126 F.3d at 838–39.

That was too much for our court to accept. "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits," we said, "the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. Nothing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age. In that setting, we explained, "principles of res judicata" prevented the ALJ from revisiting the applicant's capacity to handle anything more than sedentary work in the absence of "new and additional evidence" showing a change in her condition. *Id.*

Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect outcome. *Drummond* correctly held that substantial evidence did not support the ALJ's decision. And *Drummond* correctly held that res judicata may apply to administrative proceedings. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966). If an individual, say, files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application. And res judicata would apply in both directions: to bar the government *and* individuals from relitigating a past final decision for no reason other than to take a second bite at the same apple. *See* 20 C.F.R. § 404.957(c)(1).

But res judicata does not apply in today's case. "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). Just so here. Had Earley filed a second application for disability benefits for June 25, 2010 to May 15, 2012, the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds and the principles of finality that it supports. But Earley did not do that. She filed a new application for a new period of time. When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only "foreclose[s] successive litigation of the very same claim." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

While we are at it, we should point out that issue preclusion, sometimes called collateral estoppel, rarely would apply in this setting. That doctrine "foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved." *Id.* at 748–49. But human health is rarely static. Sure as we're born, we age. Sometimes we become sick and sometimes we become better as time passes. Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have "actually litigated and resolved" whether a person was disabled at some later date.

All of this helps to explain why *Drummond* referred to "principles of res judicata"—with an accent on the word "principles." 126 F.3d at 841–43. What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. *Id.* at 842; *see Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999). That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

At the same time, an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

Cementing our conclusion is a defect that arises from a broad reading of *Drummond*—a defect that would do far more harm than good for social security applicants. *Drummond* involved a black swan—the unusual situation in which the individual wanted the administrative law judge to make the same finding on one issue that he had made in a prior ruling. Most applicants reapply only because the Administration found them not to be disabled. Just ask Sharon Earley. All applicants in that setting want the next administrative law judge to examine the new record and make a new, more favorable finding. *See Albright*, 174 F.3d at 476–77. But if res judicata applied here, it would prevent the Commissioner *and* the individual from seeking

fresh review of a new application for a new period of time. Some of our unpublished decisions seem to have done just that, to the misfortune of the individual seeking disability benefits for a new period of time. *See, e.g.*, *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (per curiam); *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 464 (6th Cir. 2004). No such requirement exists.

This approach, as we see it, accords in the main with the approach taken by our sister circuits. *See Albright*, 174 F.3d at 473 (4th Cir. 1999); *Groves*, 148 F.3d at 810 (7th Cir. 1998); *Buckley v. Heckler*, 739 F.2d 1047, 1048–49 (5th Cir. 1984). In fact, one of them faced a problem almost identical to the one we face—the need to correct an overreading of a prior decision with respect to this precise issue. In *Lively v. Secretary of Health & Human Services*, the Fourth Circuit confronted a similar set of facts to those we addressed in *Drummond*. 820 F.2d 1391, 1391–92 (4th Cir. 1987). The court referred to the "principles of res judicata" and the "principles of finality and fundamental fairness" before holding for the applicant. *Id.* at 1392. In fact, our *Drummond* opinion cited *Lively* several times. *See Drummond*, 126 F.3d at 840–42. But the Fourth Circuit later clarified that, "[a]t its essence, *Lively* really has very little to do with preclusion." *Albright*, 174 F.3d at 477. Instead, it was "best understood as a practical illustration of the substantial evidence rule" in which the prior factual finding was "such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence." *Id.* at 477–78. *Albright* is to *Lively* what this case is to *Drummond*.

The Administration asks us to go further. In reviewing a second application by the same individual, it thinks the administrative law judge should completely ignore earlier findings and applications. But it overstates the difference between our standard and the standard in other circuits. Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making. That's why we strongly suspect that the other circuits would reach the same *outcome* as our court did in *Drummond* and the Fourth Circuit did in *Lively* and why our current description of the standard is no different in the main from what any other circuit is doing today.

All roads in the end lead to this destination: The ALJ should have another opportunity to review the application under the correct standard. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87,

93–95 (1943).  In the interim, Earley asks us to enter an award of immediate benefits.  But such a ruling "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  That is not this case.

For these reasons, we reverse the district court and remand with instructions to send the case to the Administration to reconsider Earley's application for benefits.