NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0356n.06

Case No. 20-1978

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 20, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| FARMERS MUTUAL HAIL INSURANCE COMPANY OF IOWA, | ) ) ) | |
| Petitioner-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| EDGAR MILLER, | ) | |
| Respondent-Appellant. | ) ) | |

BEFORE: SUTTON, Chief Judge; SUHRHEINRICH and NALBANDIAN, Circuit Judges.

SUTTON, Chief Judge. To guard against the risks of a disappointing harvest, farmers often acquire crop insurance. That's what Edgar Miller did, and with ample initial rewards. After facing three poor seasons in a row, he obtained a recovery from his crop insurer. But the insurer later realized it had overpaid. That led to arbitration and eventually to a return of the extra payments, all over Miller's objection. The district court confirmed the arbitrator's award. So do we.

I.

In the face of economic pressures for farms to grow larger, it has become "harder to ignore the enormous increase of indebtedness and overhead that has accompanied the enlargement of farm[ing]." Wendell Berry, *The Unsettling of America: Culture and Agriculture* 65 (1977). Larger farms mean larger risks and more reasons to insure against the endemic risks of a bad year. *See*

*generally Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 266 (6th Cir. 2021).

The problem is not new. In 1938, Congress created the Federal Crop Insurance Corporation to regulate the area. 7 U.S.C. § 1508(h); *id.* § 6933. Consistent with this mandate, the Insurance Corporation has promulgated the Common Crop Insurance Policy, which establishes rules for insurance coverage and rules for resolving disputes over crop insurance contracts. 7 C.F.R. § 457.8. The Insurance Corporation reserves the right to interpret the Crop Insurance Policy and to determine how best to protect the industry from poor crop years. *Id.* § 457.8(20)(a); *see Adkins v. Silverman*, 899 F.3d 395, 399 (5th Cir. 2018).

Edgar Miller's farm straddles the Indiana–Michigan border, with the bulk of the land located near White Pigeon, Michigan. Miller grows corn and soybeans and obtained crop insurance from Farmers Mutual Hail Insurance Company of Iowa.

Miller had a poor crop year in 2012, followed by another bad one in 2013. He filed an indemnity claim with Farmers Mutual. The insurance company covered Miller's losses.

The next year Miller filed a claim for the 2014 season. Farmers Mutual objected to his recordkeeping, and it refused to indemnify him. While processing this last request, the insurance company discovered problems with Miller's prior claims. Farmers Mutual realized that it had overpaid Miller for crop years 2012 and 2013, in large part due to his poor recordkeeping. Farmers Mutual sought a refund of more than $100,000.

As allowed by the federal agency's Crop Insurance Policy, Miller sought to arbitrate this reimbursement demand as well as the insurance company's decision not to cover his 2014 claim. The arbitrator ruled for Farmers Mutual, noting that "while Miller may be a good farmer, he is a very poor record keeper." R.1-1 at 2. Based on Miller's inconsistent recordkeeping, the arbitrator

denied his insurance claim for the 2014 season. As to the claims for reimbursement, the arbitrator read the Crop Insurance Policy as allowing an insurance company to adjust previously paid claims based on poor recordkeeping. It ordered Miller to return the overpayments.

Farmers Mutual filed a petition in federal court to confirm the arbitration award. Miller sought to nullify the award on the ground that the arbitrator exceeded its authority by interpreting (as opposed to applying) the Crop Insurance Policy. 7 C.F.R. § 457.8(20). Miller argued that the retroactive changes to the audited and settled crop insurance claims for the 2012 and 2013 seasons rested on interpretations of the federal policy that the arbitrator had no power to make. The district court agreed, reasoning that the "dispute over a retroactive redetermination [of] the 2012 and 2013 crop years squarely raises policy interpretation issues" that the Insurance Corporation alone has the power to resolve. *Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, 366 F. Supp. 3d 974, 978 (W.D. Mich. 2018). The court nullified the arbitration award "pending a policy interpretation by the [Insurance Corporation]." *Id.* at 979.

In response to the district court's decision, Farmers Mutual and Miller asked the Insurance Corporation to determine whether the Crop Insurance Policy authorizes an arbitrator to redetermine claims based on poor recordkeeping. The Insurance Corporation permitted Farmers Mutual to seek reimbursement in this setting.

Farmers Mutual renewed its petition to confirm the arbitration award, and the district court granted it. Miller appealed, challenging the arbitrator's authority to construe the Policy and the court's handling of the claim after its initial ruling.

## II.

The parties share common ground over the scope of our review. They agree that the Federal Arbitration Act applies to this dispute. They agree that the Act requires a court to confirm

an arbitration award unless it falls within one of the Act's exceptions. 9 U.S.C. § 9; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). And they agree about the relevant exception—that the arbitrator may not exceed its power under the relevant contract or law. 9 U.S.C. § 10(a)(4).

Created by Congress, the Federal Crop Insurance Corporation regulates the ins and outs at this intersection of farming and crop insurance. *See generally Ackerman v. United States Dep't of Agric.*, 995 F.3d 528, 529 (6th Cir. 2021). Consistent with this delegation of authority, it has promulgated a Crop Insurance Policy that sets the terms of coverage and establishes the rules for resolving disputes over crop insurance contracts. 7 C.F.R. § 457.8. The Insurance Corporation reserves the right to interpret the Crop Insurance Policy and to determine how best to protect the relevant stakeholders. If a dispute "involves a policy or procedure interpretation," the insurer or the insured "must obtain an interpretation" from the Insurance Corporation. *Id.* § 457.8(20). At the very least, a "policy or procedure interpretation" arises where an arbitrator must decide "the meaning of any policy provision or procedure." *Id.* Although the Insurance Corporation recommends that regulated entities seek its interpretation before an arbitrator makes a decision, *see id.* § 400.766(b)(1), parties may ask the agency for its views after the arbitrator acts, *see Final Agency Determination* 230 (April 10, 2015), https://www.rma.usda.gov/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-20a-FAD-230, R.17-2; *see also Final Agency Determination* 232 (April 10, 2015), https://www.rma.usda.gov/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-20a-FAD-232, R.17-3. If the Corporation provides an interpretation after the arbitrator has acted, "the arbitration award must be reviewed to determine if it is consistent" with the agency's view. *See Final Agency Determination* 230, R.17-2 at 3. The arbitration award must be nullified if it is "determined that

4

the inconsistency materially affected the award." *Id.*; *see also Final Agency Determination* 232, R.17-3 at 3; 7 C.F.R. § 457.8(20)(a)(1)(ii) (stating that the "[f]ailure to obtain any required interpretation from [the Insurance Corporation] will result in the nullification of any agreement or award").

In this instance, Farmers Mutual and Miller disagreed over whether the Crop Insurance Policy permits reimbursement based on poor recordkeeping alone or whether it requires a showing of fraud. Neither party flagged the issue during the initial arbitration. Miller raised the question for the first time in the district court after Farmers Mutual filed its petition to confirm the arbitration award. When the district court required the parties to seek an interpretation from the Insurance Corporation, the agency construed the Crop Insurance Policy to allow an insurer to seek reimbursement on the basis of poor recordkeeping alone.

With this interpretation by the federal agency in hand, that leaves two potential questions. Was the arbitrator's award inconsistent with the agency's view? If so, did the inconsistency materially affect the arbitrator's award?

The answer to the first question resolves this dispute. The Insurance Corporation has now made clear that a crop insurer may reject a coverage claim based on poor recordkeeping alone and may obtain retroactive reimbursement for an overpaid claim on that basis. *See Final Agency Determination* 287 (October 16, 2019), https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-21-FAD-287, R.1-9. Because the arbitrator's award respected that interpretation, no inconsistency exists. The district court correctly confirmed the arbitration award.

Acknowledging the agency's interpretation, Miller insists that the arbitrator still exceeded its power by placing the burden of proof on the farmer with respect to insurance-reimbursement

demands. Neither the Crop Insurance Policy nor the Insurance Corporation's interpretation of it, Miller claims, answers whether he or Farmers Mutual bears the burden of proof in resolving a reimbursement claim. It's true that Final Agency Determination 287 did not address in express terms the burden of proof—in part because Miller failed to ask the federal agency to resolve the point. Miller's point is fruitless, however, because the regulations and the Final Agency Determination not only clarified that the farmer need not make a knowingly false application for the Insurance Corporation to adjust the claim, they also maintained a consistent burden of proof regardless the status of the indemnification claim. That is, the regulations never provide for a presumption in favor of the farmer's claim after an insurance company makes an indemnity payment. Rather, the Insurance Corporation has "the right to examine the insured crop and all records related to the insured crop . . . as often as reasonably required during the record retention period." 7 C.F.R. § 457.8(21)(a). While the Insurance Policy requires the farmers to provide all necessary records and access to information, Miller's position would require that the Policy hold the Insurance Corporation to a different standard when reviewing a claim than when deciding it in the first place. The regulations do no such thing.

Miller points to language in the district court's first order suggesting that the court recognized that the arbitrator placed the burden on the farmer. *See Miller*, 366 F. Supp. 3d at 978 ("There is nothing in the policy language that expressly permits a redetermination of previously settled crop years, let alone allocates a burden of proof in any such retroactive redetermination to the farmer."). But that makes no difference now. The district court confirmed the award the second time around, concluding that the agency's interpretation answered the relevant question raised by this case.

*Williamson Farm v. Diversified Crop Insurance Services* does not change things. 917 F.3d 247 (4th Cir. 2019). True, as Miller points out, the Fourth Circuit observed that federal crop insurance disputes "leave very little decision making authority to the arbitrator" because it must follow any interpretive decisions "previously issued" by the Insurance Corporation. *Id.* at 255, 257. But these realities hurt Miller's cause. They show why the district court first nullified the arbitration award pending an interpretation from the Insurance Corporation and why it later approved the award as consistent with the agency's interpretation of the Crop Insurance Policy.

Independent of these considerations, Miller challenges the arbitration award on another ground: claim preclusion. As he sees it, the district court's conditional nullification of the arbitrator's award pending input from the Insurance Corporation precluded it from confirming the award later.

Claim preclusion requires four things: (1) a final merits decision; (2) a later action between the same parties; (3) an issue in the later action that was litigated or that should have been litigated in the first action; and (4) an identical claim raised in the two lawsuits. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

Miller comes up short on the first and fourth elements—a final decision on the merits about the identical claim. In the first go-round, the district court did not issue a final decision about the arbitration award. It conditionally nullified the award pending the Insurance Corporation's interpretation of the Policy. The initial order, in the district court's words, was made "pending any necessary policy determination by the [Corporation]." R.24 at 3 (quotation omitted); *cf. Mitchell v. Chapman*, 343 F.3d 811, 820–21 (6th Cir. 2003). Only after the Corporation issued its interpretation did the district court consider—finally—whether to confirm or set aside the arbitration award. Today's lawsuit in short does not address the same question addressed by the

district court the first time. A conditional decision to nullify an arbitration award before the agency issues its interpretation differs from a final decision to confirm an award after the agency issues its interpretation. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018).

Miller claims that an involuntary dismissal operates as an adjudication on the merits unless the court's order says otherwise. But the qualification applies. As shown, the district court's order conditionally nullified the arbitration award, reserving the ability to affirm the arbitration award after the Insurance Corporation had spoken.

We affirm.